UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FRANCESCA POLO,

                        Plaintiff,

                                                Case # 10-CV-6288-FPG

v.

                                                DECISION & ORDER

XEROX CORP.,

                        Defendants.

## BACKGROUND

On or about June 16, 2010, Plaintiff commenced the instant action by filing a Complaint alleging that she was subjected to a hostile work environment because of her sex and was retaliated against both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) and the New York State Human Rights Law, New York Executive Law § 296. Dkt. #1. Finally, the Plaintiff alleges that she was not paid equal wages for equal work based on her sex in violation of the Equal Pay Act, 29 U.S.C. § 206(d). The Defendant filed an Answer denying liability and advancing various defenses. Dkt. #3.

On January 31, 2012, the Defendant filed a Motion for Summary Judgment. Dkt. #17. A Response in Opposition to the Summary Judgment motion was filed on May 4, 2012. Dkt. #21. The Defendant replied on May 25, 2012. Dkt. #22. The case was referred to mediation on December 3, 2012. On February 13, 2013 a mediation certificate was filed indicating that the case was not settled.

## FACTS

The Plaintiff, Francesca Polo, a white, female, Italian born on July 25, 1971, began working with Xerox as a temporary employee in 1994-1995 as a key-op. She was later promoted

to technician.  Later in 1999, she became a member of research.  She began reporting to the program manager for the Xerox Research Center, William Hannaway, in 2002.  In 2003, she was promoted to a member of Research and Technology Services, Level One.  She secured her Master's degree in electrical engineering in 2008.  Hannaway continued to be her supervisor. She received regular increases in her pay while employed by Xerox.  (Polo Dep. 22.)

Xerox maintained well established policies and procedures prohibiting unlawful discrimination, harassment and retaliation in employment.  (Bascaran Decl. ¶ 3.)  Employees, including the Plaintiff, were trained in these policies and procedures, including the complaint process.

Xerox maintained a Tuition Aid Policy in order to reimburse eligible employees.  Eligible employees were required to submit a Tuition and Approval Form in advance of registering for a course.  (Hannaway Decl. ¶ 6.)

Between 2006 and 2008, the Plaintiff took various courses at Rochester Institute of Technology and received approximately $12,000 in reimbursement for tuition.  (Hannaway Decl. ¶ 8.)

A request for a ten-week educational leave of absence filed by the Plaintiff was approved by Xerox in 2007.  Although the Plaintiff was ineligible for tuition reimbursement during her leave of absence, Xerox agreed to pay her tuition in full.  Plaintiff, however, refused to accept the funds.  (Hannaway Decl. ¶ 13.)

Returning to work in May 2007, the Plaintiff expressed an interest in working with a different team of senior researchers.  However, in 2007 a performance appraisal on her projects was deemed low.  (Hannaway Decl. ¶ 14.)

In 2008, the Plaintiff was assigned to work on a project with a senior researcher, Reiner Eschbach.  The Plaintiff expressed her desire to work on algorithm development in anticipation

of her completion of a Master's Degree.  On May 13, 2008, in an e-mail to Mr. Hannaway, the Plaintiff complained that senior researcher Mr. Eschbach made two statements that offended her and that he acted "erratic."  In her Complaint, the Plaintiff stated that given Mr. Eschbach's "erratic" behavior, she was fearful that her ability to develop her skills and to contribute to the area of algorithm development would be hampered.  (EEOC charge filed February 19, 2009.) Mr. Eschbach was not the Plaintiff's supervisor, in fact, he had no direct reports.  (Eschbach Dep. 22.)  (Purvis Decl. ¶ 6.)  After the Plaintiff asked to be assigned to more complex work complaining that the jobs assigned to her were too easy (Eschbach Dep. 45), the Plaintiff alleges Mr. Eschbach stated that she was "one step up from a garbage collector."  Mr. Eschbach explained that the Plaintiff was the most junior in the group.  (Eschbach Dep. 50.)  She also complained that Mr. Eschbach stated "all Jews, every single one of them should be shot and killed."  The Plaintiff claimed that Mr. Eschbach demeaned her and she assumed that his intent was to make her quit.  She stated that Mr. Eschbach was "erratic" because he would jump from topic to topic.  (Polo Dep. 133-134.)  She further stated that he would show up at work sweating, wearing biking gear (Polo Dep. 146) and he would assign her projects that he did not assign to men in the lab (Polo Dep. 149).  The Plaintiff did admit that Mr. Eschbach's derogatory statements regarding Jewish people were not directed at her.  (Polo Dep. 153.)  Mr. Eschbach denied making that statement.  (Eschbach Dep. 82.)  In May 2008, she questioned whether her pay was proper and whether she would receive any additional compensation upon completion of her Master's Degree.  She complained that she was underpaid.  (Hannaway Dep. 69.)  She also alleged that she was paid less than males holding comparable positions.  The Plaintiff stated that she was not sexually harassed from any other co-workers.  (Polo Dep. 50-51.)

An investigation into the Plaintiff's complaints was conducted by Manager William Hannaway and Lisa Purvis, Laboratory Manager for Document Workflows & Services

Laboratory. Although he denied making the comments, Mr. Eschbach was warned about the remarks and reminded of Xerox's non-discrimination and anti-harassment policies. The Plaintiff was reassigned to work with another senior researcher, Zeke Fan. (Hannaway Decl. ¶ 35.)

Although the Plaintiff later also alleged that Mr. Eschbach had a photo of a woman in his office that the Plaintiff recognized as Lena, a porn star, this was a photo from the neck up only. The Plaintiff testified in her deposition that the photo itself was not pornographic, that she did not witness any other pornographic material on the job site and that Mr. Eschbach did not provide her with any pornography. (Polo Dep. 273-274.) There were no further complaints by Plaintiff regarding Eschbach's conduct.

Xerox also engaged in an investigation regarding the Plaintiff's salary. A salary analysis of the Plaintiff's pay was conducted, which included the preparation of a scattergram which plotted the Plaintiff's pay in relation to the pay of other employees. Xerox ultimately determined that the Plaintiff's pay was proper. They further determined that no pay increase was appropriate because her work performance was below target. (Hannaway Decl. ¶¶ 27, 28.)

In May 2008, the Plaintiff was invited to attend a conference in Austria. The Plaintiff requested paid time off and financial support for the trip. The Plaintiff was advised that she needed to follow the normal procedure for filing such a request and that approval would take place in mid-July. On July 14, 2008, the Plaintiff requested a decision regarding her travel to Austria. On July 18, 2008, the travel request in the amount of $2900 was approved. On July 21, 2008, the Plaintiff declined the funds, stating that the deadline to respond to the conference had passed. The Plaintiff did not previously advise her employer of a specific date needed to register for this conference. (Polo Dep. 182.)

In October 2008, the Plaintiff was approved for travel to California to attend a conference in November. She attended this conference. (Purvis Decl. ¶ 29.)

4

Due to financial difficulties between December 2008 and January 2009, Xerox implemented a plan to reduce their workforce. After reductions were considered, Xerox determined that six employees from the Research Center were required to be laid off. Eventually, four males and two females were laid off. (Bascaran Decl. ¶¶ 18-28.)

The reduction in force process had two parts. Part I involved an assessment by the various lab managers who rated each employee and provided a total score for each. Gender was not a consideration. Any prior complaints by any employees were not part of the process. During Part II, the lab manager reviewed the resulting assessment and ranked the employees. One hundred ninety-three employees were assessed. (Bascaran Decl. and Purvis Decl.)

All lab managers participated in a process to access each employee considered for the layoff. Each employee received a rating score. Employees were then ranked pursuant to the resulting scores. The lowest scoring employees were discussed and their work performance was considered. After the score and work performance was seriously considered, the Plaintiff, receiving one of the lowest scores, was selected to be one of the four laid off along with three other employees, two males and one female. (Bascaran Decl. and Purvis Decl.)

Regarding the Equal Pay Act claim, the Plaintiff identified various male individuals that she claimed performed equal work to hers yet received higher wages. Although she had no specifics as to how she was paid in comparison to males at Xerox, she "felt" that she was being paid differently. She initially did not even indicate that this was due to her gender. (Polo Dep. 216.) Xerox Corporation's investigation discovered that the other employees identified by the Plaintiff, in fact, did not have similar or equal job responsibilities, had greater tenure than the Plaintiff and in one case was actually paid less than the Plaintiff. (Hannaway Decl.)

The following individuals were identified by the Plaintiff as males who were paid differently than the Plaintiff: Ronald Dukes, Peter Paul, Gary Skinner, Claud Fillione, Jack Elliot, Daniel Hann and Aaron Burry.

The Xerox investigation regarding these employees disclosed the following:

1.     Ronald Dukes: It was discovered that he did not work in the Research Department but rather in the Business Center.  He had different job responsibilities.

2.     Peter Paul: Mr. Paul had a Ph.D., worked as a principal scientist, was two grades above the Plaintiff and conducted independent research on complex projects, unlike the Plaintiff.

3.     Gary Skinner: Mr. Skinner was a team leader, the Plaintiff was not.

4.     Claud Fillione: He was in a higher level of skill and responsibility than the Plaintiff.

5.     Jack Elliot: Mr. Elliot was one grad level higher than the Plaintiff and had different job duties.

6.     Aaron Burry: He was one grade level above the Plaintiff.  (Hannaway Decl.)

7.     Daniel Hann: He was paid less than the Plaintiff.

Although the Plaintiff alleged that some co-workers made $20,000 more than she did, she was unable to identify anyone with similar job duties.

## DISCUSSION

The Defendant, Xerox Corporation, moves for summary judgment, dismissing the Plaintiff's Complaint with prejudice alleging that there are no genuine issues of material fact and that they are entitled to a judgment in their favor.  The Plaintiff opposes the motion contending that there exist genuine issues of fact to be tried.

The Defendant argues that there is no evidence that the Plaintiff was subjected to an unlawful, sexually-hostile environment or retaliation. Additionally, they argue that the Plaintiff has failed to provide sufficient evidence that she was not paid equal wages for equal work based on her sex, in violation of the Equal Pay Act. The Court agrees with the Defendant and for the following reasons grants the Motion for Summary Judgment dismissing the Complaint.

Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence in the light most favorable to the non-movant, the court determines that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451 (1992)

Federal Rule of Civil Procedure 56 provides that summary judgment should be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In the context of employment discrimination cases, the United States Court of Appeals for the Second Circuit has explicitly cautioned district courts to use extra care when deciding whether to grant summary judgment because the ultimate issue to be resolved in such cases is often the employer's intent, an issue not particularly suited to summary adjudication. *Eastmer v. Williamsville Cent. Sch. Dist.,* 977 F. Supp. 207 (W.D.N.Y. 1997); *Schwapp v. Town of Avon,* 118 F.3d 106 (2d Cir. 1997).

After a careful review of all the filings in this case and mindful of the Second Circuit's cautions, the Court makes the following findings.

## HOSTILE WORK ENVIRONMENT

The test for hostile work environment under Title VII has objective and subjective elements and the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment.  Under the objective standard, a reasonable person must consider the conduct to create a hostile and abusive work environment.  The victim must also subjectively perceive that environment to be abusive.  The incidents must be more than episodic, they must be sufficiently continuous and concerted in order to be pervasive.  *Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002).

A plaintiff must demonstrate that the conduct occurred because of her sex.  *Brown v. Henderson*, 257 F.3d 246 (2d Cir. 2001).

Title VII does not establish a general civility code for the American workplace.  Simple teasing, offhand comments, isolated incidents of offensive conduct, unless extremely serious, will not support a claim of discriminatory harassment.  *Petrosino v. Bell Atlantic*, 385 F.3d 210 (2d Cir. 2004).   Rather, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule and insult sufficiently severe or pervasive to alter the condition of the victim's employment and creates an abusive working environment.  *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70 (2d Cir. 2010); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993).

Infrequent, limited offensive conduct is not sufficient to support his cause of action. *Cristofaro v. Lake Shore Cent. Sch. Dist.*, 473 Fed. App'x 28 (2d Cir. 2012).

Similarly under the New York State Human Rights Law Section 296, a hostile work environment requires more than a few isolated incidents.  *Forrest v. Jewish Guild for the Blind*, 3 NY3d 295 (2004).

Plaintiff's "feelings" and "beliefs" are not substitute for persuasive evidence that identifiable, valid comparators were treated in a meaningfully different manner. *Holowecki v. Federal Exp. Corp.,* 644 F. Supp. 2d 338 (S.D.N.Y. 2009). The Plaintiff's deposition testimony is replete with conclusory statements by her that she interpreted other parties' actions as hostile or abusive. (Polo Dep.)

The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement. The plaintiff must demonstrate that she personally considered the environment hostile and that the environment rose to some objective level of hostility. *Leibovitz v. New York City Transit Authority,* 252 F.3d 179 (2d Cir. 2001). Although the Court does not question that the Plaintiff here may have considered the conduct of Mr. Eschbach offensive, based upon the reasons stated below, there is not sufficient evidence that a reasonable, objective person would come to the conclusion that the offensive conduct was severe or pervasive.

Whether an environment is hostile or abusive can be determined only by looking at all the circumstances, which may include the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17 (1993). Here the conduct alleged by the Plaintiff consists of two statements made by a co-worker and the presence of a photograph in the co-worker's work space that she considered was a face of a porn star. Her statement that Mr. Eschbach was erratic relates solely to her concern that her professional development might be threatened and that he jumped from topic to topic. It had nothing to do with her gender.

The Second Circuit has specifically recognized that the mere presence of pornography in a workplace can alter the status of women therein and is relevant to assessing the objective hostility of the environment. *Wolak v. Spucci,* 217 F.3d 157 (2d Cir. 2000). However, the

Plaintiff admits in her deposition testimony that the photo in question was not pornographic. (Polo Dep.)

In order to establish her claim, the Plaintiff must establish three elements:

1.      That the harassment was sufficiently severe or pervasive as to alter the condition of her employment;

2.      That the conduct occurred because of the Plaintiff's membership in a protected class; and

3.      There is a specific basis to impute the objectionable conduct of the employer.

The Court must consider the frequency and severity of the alleged discriminating conduct, whether it is physically threatening or humiliating and whether it unreasonably interferes with an employee's work performance. Such is entirely lacking here.

The Plaintiff has failed to prove the essential elements of this claim. Any alleged derogatory comments by Mr. Eschbach did not relate to the Plaintiff's gender. His offensive remarks, relating to telling the Plaintiff that she was one step up from a garbage collector and his other obviously inappropriate remark related to those of the Jewish faith, were not related to the Plaintiff's gender. Additionally, these appear to be isolated incidents, which were quickly handled by Xerox management. There is simply insufficient evidence that any misconduct was severe or pervasive to support a claim of creation of a hostile work environment.

Imputing Liability to the Employer

Both state and federal courts have limited the exposure of employers to liability for discriminatory conduct.

Employer is subject to vicarious liability to victimized employees for actionable hostile environment created by supervisor with immediate authority over employee. *Burlington*

*Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998).

An employer is liable for co-worker harassment when it knows or should have known of the conduct, unless it can show it took immediate and appropriate corrective action. *Howley v. Town of Stratford,* 217 F.3d 141 (2d Cir. 2000).

Under the New York State Human Rights Law, the employer cannot be held liable for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning or approving it. *State Div. of Human Rights on Complaint of Greene v. St. Elizabeth's Hosp.,* 66 NY2d 684 (1985).

An employee bringing an action against an employer for sexual harassment by co-workers, not supervisors, must show that the employer is responsible for the continued hostility of the work environment. *Distasio v. Perkin Elmer Corp.,* 157 F.2d 55 (2d Cir. 1998).

Employer liability for hostile environment created by co-workers or by low-level supervisors who do not rely on their supervisory authority in carrying out harassment, attaches only when the employer has either provided no reasonable avenue for complaint or knew of harassment but did nothing about it. *Kotcher v. Rosa and Sullivan Appliance Center, Inc.,* 957 F.2d 59 (2d Cir. 1992); *Murray v. New York Univ. College of Dentistry,* 57 F.3d 243 (2d Cir. 1995).

Whether a harassing conduct of a supervisor or co-worker should be imputed to the employer is determined in accordance with common law principles of agency. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57 (1986).

There is no basis to impute the alleged harassment to Xerox. The employer had in place a complaint process which was used by the Plaintiff and the employer acted immediately upon being notified of the alleged remarks by Eschbach and enforced their non-discriminating policy

and reprimanded the employee.  The conduct by Eschbach appears to be an isolated incident which was promptly investigated and acted upon.  Eschbach was not a supervisor.  She makes no such complaints against any other employees or supervisors.  She specifically stated that Manager Hannaway in no way participated in any improper activity. (Polo Dep.)  There is no evidence presented that Xerox participated, condoned, encouraged or approved of discriminatory conduct.  In fact, the proof is the opposite.  Xerox had an anti-discrimination policy in place and enforced that policy.

Therefore, the Court dismisses the Plaintiff's first and second causes of action.


## **RETALIATION**

In order to prevail on her retaliation claim, the Plaintiff must show four elements:

1. That she participated in a protected activity.

2. That the Defendant knew of that protected activity.

3. That an adverse employment action occurred.

4. There was a causal connection between the protected activity and the adverse employment action.

*Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166 (2d Cir. 2005).

Claims of employment discrimination are analyzed under the well-recognized burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

The plaintiff bears the burden of proving a prima facie case of discrimination.  If the plaintiff succeeds in stating a prima facie case, the burden of production shifts to the defendant to state a legitimate non-discriminatory reason for taking the employment action at issue.  Should the employer meet this burden, the burden of production shifts back to the plaintiff to show the reasons proffered by the employer were not the true reasons for the adverse employment action,

but instead were a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981).

Largely conclusory allegations are insufficient to prove pretext. *Valentine v. Standard and Boor's,* 50 F. Supp. 2d (S.D.N.Y. 1999). As previously stated, many of the Plaintiff's allegations are based upon conclusory statements by her and not supported by objective facts.

The plaintiff carries the ultimate burden of persuasion and must produce evidence such that a rational finder of fact could conclude that the adverse action taken against the plaintiff was more likely than not a product of discriminatory animus. *Leibowitz v. Cornell Univ.,* 584 F.3d 487 (2d Cir. 2009).

Retaliation claims under Title VII are generally analyzed under a modified version of the *McDonnel-Douglas* test. First, the plaintiff must establish a prima facie case of retaliation by showing (1) participation in protected activity; (2) defendant's knowledge thereof; (3) materially adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. Second, if the plaintiff meets this burden, the defendant employer must then articulate a legitimate, non-discriminatory reason for its adverse employment actions. Third, if the employer does so, then the burden shifts back to the plaintiff to prove that retaliation was a substantial reason for the adverse actions. *Hicks v. Baines,* 593 F.3d 159 (2d Cir. 2010).

The plaintiff has the burden of showing that the defendant's explanations are pretext for the true discriminatory motive. *Tomka v. Seiler Corp.,* 66 F.3d 1295 (2d Cir. 1995).

Once the employer has shown valid, unrebutted reasons for its actions, the plaintiff is obligated to produce not simply "some" evidence, but "sufficient" evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the employer were false and that more likely than not discrimination was the real reason for the discharge. *Woroski v. Nashua Corp.,* 31 F.3d 105 (2d Cir. 1994).

Although it is undisputed that the Plaintiff participated in a protected activity when she filed an e-mail complaint on May 13, 2008, there is no evidence that retaliatory action was taken against her. The Plaintiff's allegation that Defendant Xerox failed to reimburse her for potential travel to Austria is simply not supported by the facts. First, Xerox did offer to reimburse her for such travel and she, in turn, rejected that offer. Secondly, the Plaintiff failed to advise the Defendant that there was a deadline for such funds. Additionally, the Plaintiff's allegation that her termination was the result of retaliation is not supported by the facts. Her termination occurred only after a detailed analysis was conducted based upon job performance and seniority. No causal connection has been established, between the complaint made by the Plaintiff, a clearly protected activity, and the failure to reimburse her for travel or her being laid off, that could lead any reasonable person to conclude that the Plaintiff was a victim of retaliation.

Although the Plaintiff proved that she engaged in a protected activity when she filed a complaint, that the employer knew of such activity and that she suffered an adverse employment action by being laid off, she has failed to prove her termination was connected to her filing of a complaint.

The employer Xerox, meticulously engaged in a process to rate employees who were subject to discharge under the reduction in force plan. The Plaintiff was one of the lowest rated employees. Once the employer produced a non-discriminatory reason for the Plaintiff's discharge, it became her burden to prove that the reasons advanced were pre-textual. She has produced no such evidence and therefore, her claim of retaliation must fail.

## EQUAL PAY ACT

In order to state a prima facie case of wage discrimination under the Equal Pay Act, the plaintiff must establish that (1) different wages were paid to a male counterpart; (2) the plaintiff

and her male counterpart performed equal work on jobs requiring equal skills, effort and responsibility; and (3) that the jobs are performed under similar working conditions. *Corning Glass Works v. Brennan,* 417 U.S. 188 (1974); 29 U.S.C.A § 206(d).

Once the plaintiff has established a prima facie case, the burden of production shifts to the defendants to show that the difference in wages was a result of one of the exceptions in the EPA. *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520 (2d Cir. 1992).

If the defendants satisfy their burden of proving legitimate business reasons for the disparity in salaries, the plaintiff can rebut defendants' explanation by showing that the proffered reasons are merely pretextual. *Christiana v. Metropolitan Life Ins. Co.,* 839 F. Supp. 248 (S.D.N.Y. 1993).

After a prima facie case is made under the Equal Pay Act, the burden shifts to the employer to demonstrate that wage disparities are due to a seniority system, a merit system, a system that measures earnings based upon quantity or quality of production, or other differentials based on any factor other than sex, provided it was implemented for a legitimate business reason. *Belfi v. Prendergast,* 191 F.3d 129 (2d Cir. 1999).

Under the Equal Pay Act, the Plaintiff must establish that the employer, Xerox, paid different wages to employees of the opposite sex for work that was equal in skill, effort and responsibility.

The Plaintiff here failed to make out a prima facie case of unequal pay absent evidence she performed substantially equal work to her comparator. *See Byrne v. Telesector Resources Group, Inc.,* 339 Fed. App'x 13 (2d Cir. 2009).

The proof produced by the Plaintiff is wholly lacking regarding establishing that the employees she compared herself to performed equal work. Each of the persons mentioned by the Plaintiff did different work or had seniority superior to the Plaintiff, justifying a pay differential.

The Plaintiff identified six male employees that she alleged did similar work, were similarly situated and were paid a higher wage.   The Defendant, Xerox, produced sufficient evidence that each of these individuals had greater educational credentials, different job responsibilities, more tenure or a different job title all justifying a higher salary than the Plaintiff. She failed to rebut any of the findings and, therefore, failed to sustain her burden.

Consequently, the Plaintiff's Equal Pay Act claim must also fail.

Therefore, pursuant to the decision as stated above, the Defendant's Summary Judgment Motion and the Plaintiff's Complaint is dismissed in its entirety with prejudice.

IT IS SO ORDERED.

Dated: January 28, 2013
         Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge